**No. 16-35376**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**GENE McLENITHAN, JR.,**

*Plaintiff-Appellant,*

**v.**

**MAX WILLIAMS, ET AL,**

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the District of Oregon
3:09-cv-00085-AC

_____

**APPELLANT'S REPLY BRIEF**

_____

Louis Fisher
Anthony J. Dick*
  *Counsel of Record*
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
ajdick@jonesday.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

I.  QUALIFIED IMMUNITY DOES NOT APPLY TO DEFENDANTS'
    FLAGRANT ACTS OF RELIGIOUS DISCRIMINATION......................3

    A.  Sincerity is Immaterial to Mr. McLenithan's Equal Protection
    Claim .................................................................................3

    B.  Defendants Are Not Entitled To Qualified Immunity Under the
    Free Exercise Clause .........................................................7

II. MR. McLENITHAN IS ENTITLED TO SUMMARY JUDGMENT.........14

    A.  Mr. McLenithan Is Entitled to Relief Under the Equal
    Protection Clause as a Matter of Law .................................15

    B.  Mr. McLenithan Is Entitled to Relief Under RLUIPA and the
    Free Exercise Clause as a Matter of Law...........................16

        1.  There Is No Need for a Remand On Sincerity........................17

        2.  The Free Exercise Clause Requires Strict Scrutiny of
        Defendants' Discriminatory Conduct .....................................23

        3.  Defendants Fail Strict Scrutiny As a Matter of Law ..............25

III. DEFENDANTS' OTHER ARGUMENTS FAIL .......................................26

CONCLUSION..................................................................................28

CERTIFICATION OF COMPLIANCE .................................................30

CERTIFICATE OF SERVICE ............................................................31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Canell v. Lightner*,
143 F.3d 1210 (9th Cir. 1998) ...........................................................................27

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) .............................................................................................23

*Colbert v. Potter*,
471 F.3d 158 (D.C. Cir. 2006) ............................................................................19

*DiRuzza v. Cty. of Tehama*,
206 F.3d 1304 (9th Cir. 2000) ........................................................................8, 14

*Freeman v. Arpaio*,
125 F.3d 732 (9th Cir. 1997) ................................................................................7

*Kimbro v. Atl. Richfield Co.*,
889 F.2d 869 (9th Cir. 1989) ..............................................................................19

*Kingsley v. Hendrickson*,
135 S. Ct. 2466 (2015) ...........................................................................................8

*Kirshner v. Uniden Corp.*,
842 F.2d 1074 (9th Cir. 1988) ............................................................................19

*Liberal v. Estrada*,
632 F.3d 1064 (9th Cir. 2011) ..............................................................................8

*Lowry v. Barnhart*,
329 F.3d 1019 (9th Cir. 2003) ............................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .............................................................................................22

*Moreno v. Baca*,
431 F.3d 633 (9th Cir. 2005) .......................................................................*passim*

*Norman v. Reed*,
502 U.S. 279 (1992) .............................................................................................27

*NRDC v. Cty. of Los Angeles,*
  840 F.3d 1098 (9th Cir. 2016) ...........................................................27

*Shakur v. Schriro,*
  514 F.3d 878 (9th Cir. 2008) .......................................................23, 24

*Sharpe v. Cureton,*
  319 F.3d 259 (6th Cir. 2003) ...........................................................28

*Stormans, Inc. v. Wiesman,*
  794 F.3d 1064 (9th Cir. 2015) .........................................................23

*Torres v. City of Madera,*
  648 F.3d 1119 (9th Cir. 2011) ...........................................................7

*Turner v. Safley,*
  482 U.S. 78 (1987).........................................................................23, 24

*United States v. Mariscal,*
  285 F.3d 1127 (9th Cir. 2002) ....................................................10, 13

*Wood v. Yordy,*
  753 F.3d 899 (9th Cir. 2014) .............................................................3

**STATUTES**

42 U.S.C. § 1997e ...............................................................................27

42 U.S.C. § 2000cc–1 ........................................................................27

**OTHER AUTHORITIES**

Judaism 101, "Who Is a Jew?", *available at* https://goo.gl/ixGiZU ........................5

## INTRODUCTION

Defendants do not dispute that they denied Mr. McLenithan a kosher diet for nearly a decade pursuant to a policy that facially discriminated against him on the basis of his religion, refusing to accommodate his dietary request solely because he is not Jewish "by birth or by conversion." They also concede, as they must, that the district court erred in granting them summary judgment on Mr. McLenithan's claims for injunctive relief. State Br. 14-18. Accordingly, there are only two issues remaining in this appeal: First, whether qualified immunity bars Mr. McLenithan's claims for damages under the Equal Protection Clause and the Free Exercise Clause. And second, whether the district court was correct to deny Mr. McLenithan's motion for summary judgment. The answer to both questions is no.

On qualified immunity, Defendants' discriminatory conduct violated Mr. McLenithan's clearly established rights under both the Equal Protection Clause and the Free Exercise Clause. Defendants' only counterargument is that their conduct was justified because they acted on the basis of a purported "reasonable mistake of fact" about whether Mr. McLenithan's dietary request was rooted in a sincere religious belief. That argument fails on both counts: Under the Equal Protection Clause, the issue of sincerity is irrelevant because Defendants denied Mr. McLenithan a kosher diet while granting one to Jewish inmates *regardless* of their sincerity. *See* Section I.A. And under the Free Exercise Clause, qualified

1

immunity cannot apply because Defendants did not act on the basis of any "mistake of fact" about Mr. McLenithan's sincerity; they did not even *inquire* about it, because it was entirely *irrelevant* under their discriminatory policy. *Id.* I.B.1. Nor were they aware of any facts that would have made it "reasonable" for them to doubt Mr. McLenithan's sincerity at the relevant time. *Id.* I.B.2.

As for summary judgment, Defendants argue that a remand is required solely for the purpose of holding a trial on whether Mr. McLenithan's dietary request was based on a sincere religious belief. As noted, however, the issue of sincerity is irrelevant to Mr. McLenithan's Equal Protection claim. *Id.* II.A. And while sincerity is relevant to his Free Exercise and RLUIPA claims, the district court has already expressly held that Mr. McLenithan "has established his belief that he must eat a Kosher diet is sincerely held [based on] his religious beliefs as a Seventh Day Adventist." ER10. Defendants cannot rewrite the district court's holding in this regard, and it would have been legally erroneous for the district court to hold otherwise. Defendants not only *conceded* Mr. McLenithan's sincerity based on their personal interview of him, but they have also failed to identify any genuine issue of fact that could rebut the overwhelming evidence that his kosher religious practice is sincere. *See* Section II.B.1. Thus, strict scrutiny applies under both RLUIPA and the Free Exercise Clause as a matter of law. *Id.* II.B.2. And

because Defendants do not dispute that they fail strict scrutiny as a matter of law, Mr. McLenithan is entitled to summary judgment on both claims. *Id.* II.B.3.[1]

Finally, there is no merit to the arguments that Defendants make in a last-ditch effort to resist summary judgment: Mr. McLenithan's claims for injunctive relief are not moot, and neither the Prison Litigation Reform Act (PLRA) nor the statute of limitations poses any obstacle to his requested relief. *See* Section III.

# I. QUALIFIED IMMUNITY DOES NOT APPLY TO DEFENDANTS' FLAGRANT ACTS OF RELIGIOUS DISCRIMINATION

## A. Sincerity is Immaterial to Mr. McLenithan's Equal Protection Claim

Defendants do not dispute that it violates clearly established law under the Equal Protection Clause to discriminate on the basis of religion between Jewish and non-Jewish inmates who are "similarly situated." State Br. 12-13. Nonetheless, Defendants claim that they are entitled to qualified immunity because "a reasonable official could have concluded" that Mr. McLenithan's request for kosher meals was not sincerely religious. According to Defendants, this would

---

[1] Defendants concede that strict scrutiny applies to substantial burdens on religious exercise under RLUIPA. But nonetheless, the level of scrutiny that applies under the Free Exercise Clause remains significant because circuit precedent holds that individual-capacity damages claims cannot be brought under RLUIPA. *See Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014). Although Mr. McLenithan is foreclosed from challenging that rule here, he reserves his right to challenge it *en banc* or before the Supreme Court.

3

have meant that he was not "similarly situated" to Jewish inmates. State Br. 13. This argument cannot withstand scrutiny.

For purposes of Mr. McLenithan's Equal Protection claim, the issue of sincerity is immaterial because Defendants undisputedly provided kosher meals to Jewish inmates "upon request" *regardless* of their sincerity. ER53. Defendants do not deny that they routinely provided kosher food to Jewish inmates without even *inquiring* into their sincerity as long as they were Jewish "by birth or by conversion." ER53, 68, 134. Nor do Defendants dispute that they refused Mr. McLenithan's request for a kosher dietary accommodation for eight years without ever inquiring into his sincerity, based solely on the avowedly discriminatory rationale that "Kosher Diets are for Jewish inmates." ER81; Op. Br. 30-31. Thus, it is clear that Defendants would have granted Mr. McLenithan's request for a kosher meal if he were Jewish by birth or conversion, even if he were entirely irreligious and non-practicing, or if he practiced some elements of Judaism but did not have a sincere religious practice of keeping kosher. But instead, they denied his request solely because he came from the "wrong" religious background. That is clearly unconstitutional discrimination on the basis of religion.

In Mr. McLenithan's opening brief, he noted several times that Defendants routinely provided kosher meals to traditionally Jewish inmates "upon request" without any inquiry into their sincerity. Op. Br. 1, 13, 23, 30, 32, 45. Defendants

4

do not dispute this point, nor could they: Between 1999 and 2009, Defendants' written policy clearly stated that they would "approve [an] inmate's request" for a kosher diet without inquiring into sincerity as long as a "[a] Jewish religious representative verifie[d] that the inmate [was] Jewish in accordance with the religious doctrinal requirements of Judaism." ER 68-69. Defendants' policy further stated that the category of qualifying inmates included all people who were Jewish "by birth or by conversion," regardless of whether they sincerely adhered to a religious kosher diet. ER 68; *see also* ER 134 ("In order to participate, an application . . . will be sent to an approved Jewish religious representative for verification that the inmate is Jewish by birth or by conversion in accordance with the religious doctrinal requirements of Judaism."). And indeed, every branch of Judaism recognizes that a person who is born to a Jewish mother qualifies as Jewish, regardless of whether that person maintains a sincere religious practice of adhering to a kosher diet. *See, e.g.*, Sanhedrin 44a ("A Jew, even though they have sinned, is still a Jew"); Judaism 101, "Who Is a Jew?", *available at* https://goo.gl/ixGiZU ("[A] person born to a Jewish mother who is an atheist and never practices the Jewish religion is still a Jew, even in the eyes of the ultra-Orthodox."). In light of these undisputed facts, Defendants do not even attempt to deny that their policy facially discriminated against non-Jewish inmates *regardless* of sincerity.

Defendants' undisputed course of conduct further confirms that they would have granted Mr. McLenithan a kosher diet but for his non-Jewish background, and that his religious sincerity was completely irrelevant. After Mr. McLenithan first requested a kosher diet in the year 2000, Defendants did not even *ask* about his sincerity until late 2008; instead they told him that "[i]t is the department's policy that only Jewish adherents are approved for Kosher diet." ER77. When separate litigation finally prompted Defendants to interview Mr. McLenithan about his sincerity, they gave him a "10 out of 10" sincerity rating, but that *still* was not enough for them to grant him a kosher diet, which they refused to do for *seven more months* until after he filed a federal lawsuit. *See* Op. Br. 11-12. Likewise, Defendants do not claim that they ever inquired into the sincerity of Jewish inmates who requested kosher meals. Much less do they argue that they ever would have actually refused kosher meals to any Jewish inmate who asked. And even if they *tried* to make that argument now, it would contradict both their written policy and what they expressly told Mr. McLenithan in 2006, when they informed him that he "d[id] not qualify for participation in the Kosher Diet Program" solely because he was not "Jewish by birth or by conversion." *See* ER 68, 134.

Accordingly, based on Defendants' own admissions and their express written policy, it is clear that if Mr. McLenithan had been Jewish "by birth"—even if he were a non-practicing Jew—he would have been granted a kosher diet "upon

6

request" without any inquiry into his religious sincerity. ER53. But because he had a different religious background, his request was summarily denied. That is the very definition of unconstitutional religious discrimination between "similarly situated" individuals: treating people differently for no reason other than their religious background. *See, e.g.*, *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) ("The Constitution's equal protection guarantee ensures that prison officials cannot discriminate against particular religions."). Thus, because Defendants admit that such flagrant discrimination violates "clearly established" law under the Equal Protection Clause, State Br. 12-14, it is clear as a matter of law that they are not entitled to qualified immunity.[2]

## B. Defendants Are Not Entitled To Qualified Immunity Under the Free Exercise Clause

Defendants also contend that they are entitled to qualified immunity under the Free Exercise Clause due to a "reasonable mistake of fact" about Mr. McLenithan's religious sincerity. State Br. 4. In particular, they argue that the Free Exercise Clause does not prohibit "denying a kosher meal to an inmate who does not sincerely believe that his religion requires him to keep kosher," and here "a reasonable official could have concluded" that Mr. McLenithan's kosher request

---

[2] This Court "ha[s] never required a prior case on all fours prohibiting [a] particular manifestation of unconstitutional conduct to find a right 'clearly established,'" but has "repeatedly stressed that officials can still have fair warning that their conduct violates established law even in novel factual circumstances." *Torres v. City of Madera*, 648 F.3d 1119, 1128-29 (9th Cir. 2011).

was not sincere. State Br. 8-13. This argument must be rejected for two reasons. First, Defendants clearly did not act on the basis of any "mistake of fact" about the sincerity of Mr. McLenithan's request for a kosher diet: they denied his request for nine years without ever even *inquiring* about his sincerity, which was entirely irrelevant under their discriminatory policy. And second, based on the facts known to the Defendants at the time, they could not possibly have held a "reasonable" belief that his kosher religious practice was insincere.

Because Defendants "bear[] the burden of proof on the issue of qualified immunity," *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005), they "must prove that [their] conduct was reasonable," *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). They cannot carry that burden.

**1.** In order to be entitled to qualified immunity based on a reasonable mistake of fact, the officer must have actually *held* the mistaken belief and *relied* on it in committing the constitutional violation. As the Supreme Court has stressed, qualified immunity requires the officer's conduct to be objectively reasonable based on facts known to the officer "at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The inquiry, which is ultimately "objective not subjective," must take into account the "perspective" of the particular officer "on the scene." *Id*. at 2472-73. Thus, "an officer's belief in a mistaken fact *must be held* reasonably and in good faith."

8

*Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) (emphasis added). And if the defendant has not actually "relied" on a factual mistake, then such mistake cannot possibly "justify [his] conduct" in violating the plaintiff's constitutional rights. *Moreno*, 431 F.3d at 642. Accordingly, if an officer denies a religious accommodation without relying on any assessment of the sincerity of the request, the denial cannot be considered "objectively reasonable" on a sincerity rationale. Where, as here, clearly established law makes sincerity the only possible valid basis for denying an accommodation, no reasonable officer would deny the accommodation without even assessing the sincerity of the request.

Defendants do not even *attempt* to argue that they denied Mr. McLenithan's request for a kosher diet on the basis that his request was insincere. To the contrary, the undisputed facts show that they denied Mr. McLenithan's request solely because he was not Jewish. As noted above, Defendants' written policy made clear that his sincerity was irrelevant: he was categorically ineligible for a kosher meal for the facially discriminatory reason that he was not Jewish "by birth or by conversion." ER 68. Defendants never cited sincerity as a basis for denying his request, but repeatedly told him that his request was denied solely because he was not Jewish. Op. Br. 6-9. Indeed, Defendants did not even *inquire* about Mr. McLenithan's sincerity until 2008, when Chaplain Toth finally interviewed him— and awarded him a "10 out of 10" sincerity rating. The record contains no

indication that this assessment conflicted with any contrary belief that any Defendant ever held.

These undisputed facts make clear that the denial of Mr. McLenithan's kosher request was not remotely based on any "mistake of fact" about his sincerity, much less a *reasonable* mistake of fact. Defendants' qualified-immunity defense fails for that reason alone.

**2.** In any event, even if Defendants mistakenly believed that Mr. McLenithan's kosher request was insincere, that mistake cannot possibly be considered "reasonable" based on "the objective facts known to [Defendants]" at the time. *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002). "[I]t [is] clearly established that the facts upon which the reasonableness of [an action] depends . . . must be known to the officer at the time." *Moreno*, 431 F.3d at 642. If a "fact was unknown to [Defendants] at the time of their actions and was not a fact on which [they] relied," then it cannot "justify their conduct." *Id.*

The only fact that Defendants knew when they denied Mr. McLenithan's request for a kosher diet was that he was not Jewish. Nonetheless, Defendants claim that "[e]ven assuming that defendants denied plaintiff's requests *simply because he was not Jewish*, that conduct was not clearly unlawful" because "it was reasonable to believe that only people of the Jewish faith would have a sincere belief that they must keep kosher." State Br. 10 (emphasis added). Such explicit

religious stereotyping must be firmly rejected as unreasonable as a matter of law. It also must be rejected based on the undisputed facts here, because Defendants' own handbook recognized that some Seventh-day Adventists maintain a "strict kosher" diet, and that their dietary practices are a matter of "individual conscience." ER77. Defendants were also put on notice by the *Wofford* decision that some of their own Seventh-day Adventist inmates kept kosher. *See* Op. Br. 9-10. And Defendants' own prison chaplain (Defendant Toth) interviewed Mr. McLenithan and gave him a "10 out of 10" sincerity rating. In light of these facts, it was not remotely "reasonable" for Defendants "to believe that only people of the Jewish faith would have a sincere belief that they must keep kosher." State Br. 10.

Defendants also claim that they had reason to doubt the sincerity of Mr. McLenithan's kosher religious request because "it [is] not common practice for Seventh Day Adventists to keep kosher." State Br. 9. But even assuming that the practice is not *common* among Seventh-day Adventists, that says nothing about Mr. McLenithan's *individual* sincerity in following the *less common* practice of keeping a "strict kosher" diet. By Defendants' logic, prison officials would have *carte blanche* to discriminate against any religious practice that departs from the "common" practice of a mainstream organized religion. That would effectively penalize religious minorities for holding unorthodox views.

11

Defendants argue that in the course of requesting a kosher meal for religious reasons, Mr. McLenithan also complained about the non-kosher options for "secular reasons," including the fact that they "lacked variety" and "the beans . . . were not properly cooked." State Br. 9. But Mr. McLenithan expressed both secular *and* religious complaints about the non-kosher food, ER 76, 124-129, and this hardly supports any reasonable inference that his religious beliefs were insincere. Most religious believers who adhere to a kosher diet surely *also* have secular reasons to complain about the quality of standard prison fare, but this does not call into question their parallel religious objections.

Moreover, Mr. McLenithan did not submit the cited "secular" complaints until July 19, 2004, nearly four years *after* his request for a kosher meal was first rejected by prison authorities in 2000. *See* ER 124-129. The information contained in this 2004 request thus could not possibly have been the reason for the denial—at best, it is a *post hoc* pretext. There is also no suggestion anywhere in the record (or even in Defendants' briefs) that such detailed information about Mr. McLenithan's request was ever brought to the attention of any of the named Defendants, with the possible exception of Chaplain Toth—who ultimately gave him a "10 out of 10" sincerity rating. Most of the named Defendants are high-ranking prison officials who maintained a discriminatory policy that they *knew* would result in the denial of kosher meals to non-Jewish inmates like Mr. McLenithan *regardless* of their

sincerity. They had *no information whatsoever* that would support any reasonable belief one way or another about Mr. McLenithan's individual sincerity.

Finally, Defendants assert a handful of *post hoc* reasons that they claim might, in hindsight, provide some basis to doubt Mr. McLenithan's sincerity. But Defendants do not even attempt to argue that any of this factual information was actually "known to the[m]" at the relevant time. *Moreno*, 431 F.3d at 642. For example, Defendants claim that it was reasonable to doubt Mr. McLenithan's sincerity because he "had a history of purchasing non-kosher items" from the prison store and he was allegedly "unaware of basic Jewish traditions or of the rules regarding preparation of kosher food" under traditional Judaic law. State Br. 9. But to support this claim, they cite to the deposition of Mr. McLenithan that occurred in August 2009, and a "review of canteen purchases" that was conducted in January 2010. Defendants also cite to various "expert" opinions that were offered for litigation purposes in 2009 and 2010. State Br. 10. This late-breaking information could not possibly have created any reasonable doubt as to Mr. McLenithan's sincerity during the period when Defendants denied his kosher requests between 2000 and 2009.

For all of these reasons, Defendants have not even *alleged* any facts that were actually "known to th[em]" that could have given rise to a reasonable belief that Mr. McLenithan's request for a kosher diet was insincere. *Mariscal*, 285 F.3d

13

at 1131. Accordingly, they cannot possibly "bear[] the burden" to "prove that [their] conduct was reasonable" based on a supposed "reasonable" mistake of fact about Mr. McLenithan's sincerity. *Moreno*, 431 F.3d at 638; *DiRuzza*, 206 F.3d at 1313.

*        *        *

For these reasons, Defendants' qualified-immunity defenses fail as a matter of law. Under the Equal Protection Clause, sincerity is immaterial. And under the Free Exercise Clause, sincerity cannot help them because they plainly did not deny Mr. McLenithan's accommodation request based on any "mistake of fact" about his sincerity, much less a *reasonable* mistake of fact.

## II.    MR. McLENITHAN IS ENTITLED TO SUMMARY JUDGMENT

In his opening brief, Mr. McLenithan explained that the district court was exactly wrong to grant summary judgment against him: The court should have granted summary judgment *in his favor* because Defendants' discriminatory conduct clearly violated the Equal Protection Clause, the Free Exercise Clause, and RLUIPA. Op. Br. 53-54.

Defendants concede that the district court erred by granting summary judgment in their favor. State Br. 14-18. They chiefly argue, however, that Mr. McLenithan is not entitled to summary judgment because there is purportedly a genuine dispute of material fact about whether his request for a kosher diet was based on a sincere religious belief. State Br. 20-25. That argument fails because

14

sincerity is irrelevant to Mr. McLenithan's Equal Protection claim, and there is no genuine dispute about sincerity.

### A. Mr. McLenithan Is Entitled to Relief Under the Equal Protection Clause as a Matter of Law

In his opening brief, Mr. McLenithan established that the Equal Protection Clause prohibits a state from discriminating between "similarly situated" inmates on the basis of religion. Op. Br. 28-31; 37-39. Defendants do not dispute this point of law, but instead try to resist summary judgment solely on the ground that Mr. McLenithan is not "similarly situated" to Jewish inmates because they "sincerely believe that they require kosher meals to comply with tenets of their religion." State Br. 20. As explained above, however, the issue of sincerity is immaterial to Mr. McLenithan's Equal Protection claim because during the relevant time period, Defendants undisputedly provided kosher meals to Jewish inmates "upon request," *regardless* of their religious sincerity. *Supra* I.A. Thus, by refusing a kosher diet to Mr. McLenithan solely because of his religious background—i.e., because he was not Jewish "by birth or by conversion," ER 68, 134—Defendants undisputedly discriminated against him and in favor of "similarly situated" inmates of Jewish religious background. Because Defendants do not and cannot dispute that such religious discrimination violates "clearly established" law, and because there are no genuine disputes of material fact on this issue, Mr. McLenithan is entitled to damages and injunctive relief under the Equal Protection Clause as a matter of law.

15

### B. Mr. McLenithan Is Entitled to Relief Under RLUIPA and the Free Exercise Clause as a Matter of Law

In his opening brief, Mr. McLenithan established that he is entitled to summary judgment under both RLUIPA and the Free Exercise Clause. Under RLUIPA, strict scrutiny applies because Defendants' denial of a kosher diet imposes a substantial burden on his exercise of religion. Op. Br. 32-34. And under the Free Exercise Clause, strict scrutiny applies because the burden results from a policy that discriminates on the basis of religion. Op. Br. 25-28. Thus, because Defendants fail strict scrutiny as a matter of law, Mr. McLenithan is entitled to summary judgment under both provisions. Op. Br. 34-50, 53-54.[3]

Defendants make two arguments to resist summary judgment. First, with respect to both RLUIPA and the Free Exercise Clause, they argue that a remand is necessary because there is a genuine dispute of material fact as to whether Mr. McLenithan's request for a kosher meal is based on a sincere religious belief. *See* State Br. 20-25. And second, with respect to the Free Exercise Clause only, they argue that there is a special "prison exception" to the ordinary rule that the Free Exercise Clause requires strict scrutiny of discriminatory burdens on religious exercise. *See* State Br. 17 & n.8. Both of these arguments lack merit. Thus, because they do not dispute that they fail strict scrutiny, summary judgment is warranted.

---

[3] As noted above, the Free Exercise Clause is independently significant because it authorizes both damages and injunctive relief, whereas RLUIPA does not authorize claims for damages. *See supra* n.1.

16

### 1.    There Is No Need for a Remand On Sincerity

Defendants' primary argument is that there is a genuine dispute of material fact as to whether Mr. McLenithan's request for a kosher diet is based on a sincere religious belief. Accordingly, they contend that Mr. McLenithan is not entitled to summary judgment under RLUIPA or the Free Exercise Clause, and that this Court should instead remand for the district court to hold a trial on Mr. McLenithan's sincerity. State Br. 20-22. This argument fails. A remand would be pointless because the  district court has already held that Mr. McLenithan "has established his belief that he must eat a Kosher diet is sincerely held and is rooted in his religious beliefs as a Seventh Day Adventist." ER10. That holding was plainly correct, and any contrary holding would have been legal error.

Defendants try but fail to evade the plain meaning of the district court's express holding on sincerity. They argue that while it was "perhaps inartfully phrased," what the court *really* meant to do was nothing more than "address[] the question whether plaintiff met his initial burden of producing evidence that the denial of kosher meals impacted his religious exercise." State Br. 22-23. But that is not what the district court said. And contrary to Defendants' assertion, the "rest of the district court's opinion" does not "support[]" that counter-textual interpretation. State Br. 23. The district court was considering *both* Mr. McLenithan's motion for summary judgment *and* Defendants' cross-motion for summary judgment. ER 3.

Thus, the court addressed *both* the question whether Defendants had shown that Mr. McLenithan's "religious beliefs are insincere" as a matter of law (no), ER 11, *and* the question whether Mr. McLenithan had "established" his sincerity as a matter of law (yes), ER 10.[4]

Based on the undisputed facts before the district court, Mr. McLenithan's sincerity is undeniable. Most conspicuously, as Mr. McLenithan pointed out in the district court, Defendants' *own prison chaplain*, Chaplain Toth (one of the named Defendants here), interviewed Mr. McLenithan and gave him a "10 out of 10" sincerity rating. ER 108; *see also* Op. Br. 11, 12, 29, 53. Defendants did not dispute that point in the district court, and they have likewise conceded it during this appeal: In this Court, Mr. McLenithan filed an unopposed Motion to Supplement the Record with a copy of the perfect sincerity rating as recorded by Chaplain Toth, which was inadvertently omitted from the district-court record due to a photocopying error. *See* Dkt. # 14 (Sept. 8, 2016). Defendants' counsel stated that they were able to confirm the authenticity of the document, and they accordingly consented to the motion to supplement the record. *Id*. at 1.[5]

---

[4] To be sure, the district court noted that Defendants presented some evidence in an attempt to support their sincerity argument, and speculated that this evidence might "impact a jury" on the issue of sincerity. ER 11. But the district court did not say that the possible impact was weighty enough to create a *genuine* dispute on the ultimate factual issue.

[5] On November 7, 2016, a "clerk order" issued denying the consent motion, apparently without any consideration by the panel. *See* Dkt. # 23. The order cited

Accordingly, it is entirely undisputed that Chaplain Toth, himself one of the named Defendants in this case, expressly determined that Mr. McLenithan's kosher religious observance is sincere based on a first-hand interview, as recorded on an official state form. That determination is equally binding on the other Defendants, who were Chaplain Toth's superiors within the ODOC hierarchy, and who authorized him to act as their agent on such matters. *See Kimbro v. Atl. Richfield Co*., 889 F.2d 869, 876 (9th Cir. 1989). Accordingly, Defendants cannot now dispute Mr. McLenithan's sincerity, having previously endorsed it through their own prison chaplain.

An abundance of other evidence strongly confirms the sincerity of Mr. McLenithan's kosher religious practice. Defendants' own "Handbook of Religious Beliefs and Practices" acknowledges that some Seventh-day Adventists "follow a Kosher diet," which "can be strict Kosher or pork free depending on the individual," as "[i]ndividual conscience is the determining factor." ER117. Mr. McLenithan has been observing a kosher diet under ODOC's watchful eye since shortly after this

---

(continued…)

Circuit Rule 10-2 and *Kirshner v. Uniden Corp.*, 842 F.2d 1074, 1077 (9th Cir. 1988). But neither authority forecloses this Court's discretion to supplement the record in a situation like this one, where there is a consent motion to supplement with part of a record document that was mistakenly omitted below due to a photocopying error. *See Lowry v. Barnhart*, 329 F.3d 1019, 1024–25 (9th Cir. 2003); *Colbert v. Potter*, 471 F.3d 158 (D.C. Cir. 2006). Mr. McLenithan respectfully requests that the panel reconsider the motion if necessary, or simply take judicial notice of the fact that Chaplain Toth's sincerity rating is undisputed.

litigation began in 2009, and during this eight-year period he has *never* been cited for any violation of the "Kosher Diet Participation Agreement," which requires him to "eat and possess on [his] food tray only those food items served as part of the Kosher Diet Program." ER 139. He has provided sworn affidavits giving detailed explanations of the scriptural and theological basis of his kosher religious practice. *See* Op. Br. 4-6. And he also submitted to a deposition where, under intensive cross-examination, he provided an extensive, coherent, and even cogent defense of why the Old Testament requires him to adhere to a kosher diet. C.R. 86, Pl. Dep.

Against all of this, Defendants insist that there is a genuine factual dispute on sincerity based on four largely irrelevant factors that they enumerate in perfunctory fashion in a single paragraph. *First*, Defendants state that when Mr. McLenithan "initially" requested a kosher diet, he "appeared to do so for secular reasons" having to do with the quality of the prison food. State Br. 21. But as noted, secular complaints about prison food are in no way inconsistent with religious objections to it, and indeed Mr. McLenithan offered *both* secular and religious reasons for wanting to avoid non-kosher prison fare. Op. Br. 4-6. Because virtually *everyone* who keeps kosher for religious reasons *also* has good reason to complain about the quality of prison food on "secular" grounds, expressing such complaints has virtually no bearing on his or her religious sincerity.

20

*Second*, Defendants state that Mr. McLenithan "had a history of purchasing non-kosher items from the canteen and *may have* eaten those items." State Br. 21 (emphasis added). But as the district court noted, it is undisputedly a common practice among inmates to buy items from the prison "canteen" store to trade and share with other inmates, Op. Br. 16, ER 4, ER 11 & n.3, and so such purchases say little if anything about the purchaser's *own* dietary practices. Defendants cannot even bring themselves to assert that Mr. McLenithan *did* eat any non-kosher items he allegedly purchased, and they certainly have not offered any *evidence* of this.

*Third*, Defendants argue that Mr. McLenithan has "focused heavily on his concerns about fear of disease and contamination . . . rather than religious scruples about food-preparation methods." State Br. 21. But obviously, concerns about cleanliness, disease, and contamination are not purely "secular" because they are part and parcel of Mr. McLenithan's *religious* belief about avoiding "unclean" foods. Certainly, these concerns are not remotely *inconsistent* with his kosher religious observance. This factor is thus entirely irrelevant to his religious sincerity.

*Fourth*, and finally, Defendants argue that it is "not common practice for Seventh-day Adventists to keep kosher," and that Mr. McLenithan is "unaware of basic Jewish traditions or the rules regarding the preparation of kosher food." State Br. 22. But obviously, many people *eat* a kosher diet without knowing the precise

21

"rules regarding the preparation" of it. And there is good reason for Mr. McLenithan to be unaware of many "basic Jewish traditions," because he is a Seventh-day Adventist rather than a traditional Jew. The record contains ample evidence that Mr. McLenithan's kosher practice is based on his own deeply informed understanding of *Seventh-day Adventist* religious principles and related scriptural passages, which he interprets to require him to follow the dietary laws as handed down by God to the Jewish people. And as already discussed, there is no reason to doubt Mr. McLenithan's *sincerity* merely because his interpretation of the Seventh-day Adventist creed may differ from the "common," mainstream view. Religious *orthodoxy* and religious *sincerity* are two very different things, and it would raise deeply troubling constitutional issues if Mr. McLenithan's unorthodox religious viewpoint were counted against him in a court of law.

Accordingly, the four factors cited by Defendants are almost entirely irrelevant to the sincerity inquiry, and are especially insignificant compared to the overwhelming amount of undisputed evidence discussed above that *supports* Mr. McLenithan's religious sincerity. Thus, "the record *taken as a whole* could not lead a rational trier of fact to find" that Mr. McLenithan's religious kosher practice is insincere, and this is not a "genuine issue for trial" that can preclude summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added). It would be both a waste of judicial resources and a

22

needless injustice to send Mr. McLenithan back to district court so that he can litigate *pro se* from his jail cell over an issue that the district court has already decided and Defendants have already conceded.

### 2. The Free Exercise Clause Requires Strict Scrutiny of Defendants' Discriminatory Conduct

In his opening brief, Mr. McLenithan explained that discriminatory burdens are subject to strict scrutiny under the Free Exercise Clause, while "neutral and generally applicable burdens" are subject to lower scrutiny. Op. Br. 25-28. Thus, because Defendants discriminated against Mr. McLenithan on the basis of religion in denying his kosher meal request, the Free Exercise Clause requires strict scrutiny here.

In response, Defendants argue in a footnote that there is somehow a special "prison exception" to the rule that strict scrutiny applies to discriminatory burdens on religious exercise. *See* State Br. 17 & n.8. In an attempt to support this extraordinary claim, Defendants cite *Turner v. Safley*, 482 U.S. 78 (1987), and this Court's decision in *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). Those cases are entirely inapposite, however, because they did not even *consider* whether prisons are somehow exempt from the ordinary rule that "strict scrutiny applies" to discriminatory burdens on religious exercise. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 546 (1993).

23

In *Turner*, the plaintiff challenged neutral and generally applicable prison policies that regulated "correspondence between inmates" and prohibited inmate marriages without "the permission of the superintendent." 482 U.S. at 81-82. There was no suggestion that the polices were in any way discriminatory on the basis of religion, and thus the case says nothing about the level of scrutiny that applies to discriminatory burdens. (If anything, *Turner* suggests that burdens on religious exercise are subject to *greater* scrutiny in the prison context: Even though the prison policy there was *not* discriminatory, the court applied *more* than the ordinary rational-basis scrutiny that typically applies to non-discriminatory burdens. *See* Op. Br. 27-28.)

Likewise in *Shakur*, the prison policy at issue did not facially discriminate between inmates of different religious backgrounds, and the inmate did not even *argue* that strict scrutiny applied. The inmate sought to exercise his religion by eating a "Halal" diet, and the court held that the state might be able to prove that he was not similarly situated to Jewish inmates who exercised their religion by keeping kosher. *Shakur*, 514 F.3d at 891. That is very different from the present case, where Defendants maintained a policy that facially discriminated on the basis of religion among inmates seeking to engage in *precisely the same* kosher religious exercise. *Shakur* says nothing about this type of situation. Much less does it create

24

a "prison exception" to the clear rule that discriminatory burdens on religious exercise are subject to strict scrutiny under the Free Exercise Clause.

### 3. Defendants Fail Strict Scrutiny As a Matter of Law

In his opening brief, Mr. McLenithan provided four reasons why Defendants fail strict scrutiny as a matter of law: First, Defendants' admitted policy of religious discrimination is not a permissible means of cost control. Second, Defendants' asserted cost saving does not qualify as a "compelling" interest. Third, Defendants have not offered and cannot offer any competent evidence to substantiate their asserted cost savings. And fourth, Defendants could control the costs of religious dietary accommodations through less-restrictive alternatives, just as other states have done. Op. Br. 34-50, 53-54.

In arguing that summary judgment should be denied to Mr. McLenithan, Defendants do not dispute *any* of these points. *See* State Br. 20-25. Instead, in the course of admitting that the lower court erred by granting summary judgment in their *favor*, they admit that "[t]he summary judgment record establishes that [ODOC] already provides kosher meals to some inmates," and that they have failed to "identify any particular security or other services that would be compromised by the potential increased costs" of allowing Mr. McLenithan to participate in the kosher program. State Br. 16. To be sure, they make a conclusory assertion that "there is a genuine dispute about the size and implications of any cost increase."

25

State Br. 17; *see also* State Br. 21 n.9. But they do not contest Mr. McLenithan's *legal* argument that even if providing an accommodation here were as costly as they claim, it would not be costly enough to implicate any truly "compelling interest." Nor do they contest *any* of Mr. McLenithan's other arguments as to why they fail strict scrutiny as a matter of law.

## III. DEFENDANTS' OTHER ARGUMENTS FAIL

Finally, Defendants make three last-ditch arguments in an attempt to avoid summary judgment: They contend that Mr. McLenithan's request for injunctive relief against their discriminatory policy is moot, and that this Court "should remand for the district court to consider whether there are other grounds for dismissal or limitation of the damages claims" under either "the Prison Litigation Reform Act" or "the two-year statute of limitations." State Br. 14 n.6. Defendants did not raise these arguments below, and none has any merit.

*First*, Defendants argue that Mr. McLenithan's claims for injunctive relief are moot because they supposedly rescinded their discriminatory policy "in 2009" and now there is "no risk" that they will ever enforce it again. State Br. 19. In fact, however, Defendants argued to the district court in 2010 that they have a "compelling interest in limiting kosher diets to Jewish inmates," ER44, and they cut off Mr. McLenithan's kosher meals in 2016 after the district court ruled in their favor on that basis. Op. Br. 17. Moreover, even if Defendants truly had abandoned

their discriminatory policy, it would not be moot because it would plainly qualify as "capable of repetition, yet evading review." *Norman v. Reed*, 502 U.S. 279, 288 (1992). The "[m]ere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the allegedly wrongful behavior could not reasonably be expected to recur." *NRDC v. Cty. of Los Angeles*, 840 F.3d 1098, 1104 (9th Cir. 2016). Defendants here have made no such showing; if anything they have shown the opposite.[6]

*Second*, Defendants argue that the PLRA might provide some "ground[] for dismissal or limitation of the damages claims" here, State Br. 14 n.6, but this Court has already held that the PLRA does not apply to damages claims for the type of constitutional violations at issue here. The PLRA provides that prisoners cannot bring claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). But this provision "does not apply" to a prisoner who "is asserting a claim for a violation of his First Amendment rights," because he is "not asserting a claim for 'mental or emotional injury'" and is "entitle[d] [to] judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." *Canell v.*

---

[6] In any event, Defendants' purported abandonment of their discriminatory policy cannot possibly moot the claims for injunctive relief under RLUIPA, which prohibits the denial of a religious accommodation "even if the [denial] results from a rule of general applicability." 42 U.S.C. § 2000cc−1(a).

*Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). The same is true of a prisoner asserting a claim for violation of his rights under the Equal Protection Clause.

*Third*, Defendants argue that there is a two-year statute of limitations for § 1983 claims in Oregon, State Br. 14 n.6, but even if so that cannot possibly provide any basis to dismiss or limit Mr. McLenithan's damages claims. It is undisputed that Defendants denied Mr. McLenithan a kosher diet up until the very day when he filed this suit, and thus his claim cannot possibly be time-barred. Moreover, because Defendants' refusal to provide him with a kosher diet was based on an unlawful pattern and practice of discriminatory conduct that inflicted an ongoing violation of his constitutional rights, he is entitled to recover damages stemming from the entire ongoing violation, which was a single unlawful practice that fell within the statute of limitations. *See, e.g.*, *Sharpe v. Cureton*, 319 F.3d 259, 267-68 (6th Cir. 2003) (holding that a claim for discrimination properly encompasses "all relevant actions allegedly taken pursuant to [a] discriminatory policy or practice, including those that would otherwise be time barred").

## CONCLUSION

For the foregoing reasons, the decision below should be reversed and summary judgment should be granted for Mr. McLenithan on all of his claims. Even if the court believes that there is a genuine dispute of fact about Mr. McLenithan's religious sincerity, it should still grant summary judgment on his

Equal Protection claim because sincerity is immaterial to that claim. At the very least, the Court should reverse and remand the district court's decision granting summary judgment for Defendants because that decision was erroneous, as Defendants themselves now concede.

## CERTIFICATION OF COMPLIANCE

1. I hereby certify that the foregoing brief complies with the type-volume limitation of Circuit Rule 32-1(b) because it contains 6,937 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Circuit Rule 32-1(c).

2. I hereby certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word in a 14-point Times New Roman proportionally spaced typeface.


Dated: January 25, 2017   /s/ Anthony J. Dick
           Anthony J. Dick

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 25, 2017. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  January 25, 2017                    /s/ Anthony J. Dick
                                            Anthony J. Dick

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-35376

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [6,937] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [/s/ Anthony J. DIck]   Date [1/25/2017]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*